# Reimbursement of Expenses Under 5 U.S.C. § 5503(a)

5 U.S.C. § 5503(a) does not prohibit individuals reappointed to the Board of Directors of the Civil Liberties Public Education Fund during a congressional recess from receiving reimbursement for travel, subsistence, and other necessary expenses associated with performing their functions.

February 2, 1998

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

This memorandum confirms oral advice conveyed to your office that individuals appointed for a second time during a congressional recess to the Board of Directors of the Civil Liberties Public Education Fund may be reimbursed for expenses associated with performing their functions.

The nine-member Board of Directors of the Civil Liberties Public Education Fund makes disbursements from the Fund for research and educational activities concerning the relocation and internment of individuals of Japanese ancestry during World War II. 50 U.S.C. app. § 1989b–5(b) (1994). The Board's members are appointed by the President, with the advice and consent of the Senate, to three-year terms. *Id.* app. § 1989b–5(c)(2). In January 1995, the President submitted to the Senate the nominations of eight individuals for vacant Board positions, but the Senate Governmental Affairs Committee never acted upon those nominations. During an adjournment of the Senate in January 1996, the President exercised his power under the Recess Appointments Clause to fill the vacancies, placing the eight previously nominated individuals on the Board. *See* U.S. Const. art. II, § 2, cl. 3 ("The President shall have Power to fill up all Vacancies that may happen during the Recess of the Senate, by granting Commissions which shall expire at the End of their next Session."). The President subsequently renominated the eight individuals in January 1997, and the Senate Governmental Affairs Committee again did not act upon those nominations. The commissions of the eight recess-appointed individuals expired upon the adjournment *sine die* of the first session of the 105th Congress. *See id.*; 143 Cong. Rec. S12,713 (daily ed. Nov. 13, 1997); *id.* at H10,952.

Board members serve "without pay," but are reimbursed for "travel, subsistence, and other necessary expenses incurred by them in carrying out the functions of the Board." 50 U.S.C. app. § 1989b–5(c)(3). You asked whether 5 U.S.C. § 5503(a) (1994) would bar reimbursement for these expenses in the event that the President reappointed, during another congressional recess, the eight individuals whose commissions expired at the end of the first session of the 105th Congress.

In pertinent part, § 5503(a) provides: "Payment for services may not be made from the Treasury of the United States to an individual appointed during a recess of the Senate to fill a vacancy in an existing office, if the vacancy existed while

29

the Senate was in session and was by law required to be filled by and with the advice and consent of the Senate, until the appointee has been confirmed by the Senate.'' This prohibition does not apply ''if, at the end of the session, a nomination for the office, other than the nomination of an individual appointed during the preceding recess of the Senate, was pending before the Senate for its advice and consent.'' *Id.* § 5503(a)(2). Section 5503(a) has been interpreted as prohibiting ''[p]ayment for services'' to individuals receiving successive recess appointments. *See* Memorandum for John P. Schmitz, Deputy Counsel to the President, from Timothy E. Flanigan, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Recess Appointment of Directors of the Federal Housing Finance Board* (Dec. 13, 1991); *Recess Appointments Issues*, 6 Op. O.L.C. 585, 586 (1982); *Recess Appointments*, 41 Op. Att'y Gen. 463, 472, 474, 480 (1960) (interpreting predecessor statute).

The fact that Board members commissioned for a second time under the Recess Appointments Clause cannot receive ''[p]ayment for services'' does not, however, resolve our inquiry. We must ask whether reimbursement for travel, subsistence, and other necessary expenses constitutes ''[p]ayment for services'' within the meaning of § 5503(a). We conclude that it does not.

The phrase ''[p]ayment for services'' is not defined in § 5503(a) or other provisions of title 5 governing pay administration. *See* 5 U.S.C. §§ 5501–5597 (1994 & Supp. II 1996). Nothing in § 5503(a) itself reveals which of two possible interpretations of the phrase is correct: a narrow interpretation, covering those forms of payment typically associated with the performance of personal services, such as fees, wages, salary, or commissions; or a broad interpretation, covering any form of payment that an individual would receive after having performed his or her government services, including a payment to offset expenses. The legislative history of § 5503(a), however, makes clear that the statute cannot be interpreted to cover reimbursement of travel, subsistence, and other expenses. Section 5503(a) was enacted as part of a 1966 *codification* of statutes relating to government employees and the organization and powers of federal agencies. *See* Act of Sept. 6, 1966, Pub. L. No. 89–554, 80 Stat. 378, 475. The Report of the Senate Committee on the Judiciary accompanying the proposed bill, H.R. 10104, 89th Cong. (1965), emphasizes that the bill's purpose was ''to restate in comprehensive form, *without substantive change*, the statutes in effect before July 1, 1965.'' S. Rep. No. 89–1380, at 18 (1966) (emphasis added); *see id.* at 20 (''[T]here are no substantive changes made by this bill enacting title 5 into law.''). Section 5503(a)'s predecessor, 5 U.S.C. § 56 (1964), stated: ''No money shall be paid from the treasury, *as salary*, to any person appointed during the recess of the Senate, to fill a vacancy in any existing office, if the vacancy existed while the Senate was in session and was by law required to be filled by and with the advice and consent of the Senate, until such appointee has been confirmed by the Senate.'' (Emphasis added.) Even if there were ambiguity as to the scope of the

phrase "payment for services" in the current version, there is no ambiguity as to the scope of the phrase "paid . . . as salary" in the prior version. The term "salary" describes a fixed, periodic payment made in exchange for services. *See, e.g., Webster's Second New International Dictionary* 2203 (1935) (defining salary as "[t]he recompense or consideration paid, or stipulated to be paid, to a person at regular intervals for services"); *Benedict v. United States*, 176 U.S. 357, 360 (1900) ("The word 'salary' may be defined generally as a fixed annual or periodical payment for services, depending upon the time and not upon the amount of services rendered"). The term would not encompass reimbursement of expenses. If we were to interpret the substitution of the phrase "payment for services" for the phrase "paid . . . as salary" as broadening the scope of § 56 to cover expenses, then we would be disregarding clear direction that Congress intended no substantive changes to existing law. Indeed, the Report specifically describes the changes reflected in § 5503(a) as "[s]tandard changes . . . made to conform with the definitions applicable and the style of this title." S. Rep. No. 89–1380, at 105. The substitution of "payment for services" for "paid . . . as salary" thus merely clarifies that the statute reaches forms of payment that, like salary, compensate for the performance of personal services. *Cf. id.* at 20 ("The word 'pay' includes all terms heretofore in use representing salary, wages, pay, compensation, emoluments, and remuneration for services."). It provides no basis for concluding that § 5503(a) extends beyond payments that compensate for the performance of personal services, to reach other payments that, like reimbursement for expenses, are merely incidental to the performance of personal services.

It may be possible to argue that the purposes underlying the enactment of § 5503(a)'s predecessors support a broad interpretation of the current phrase "payment for services." As originally enacted in 1863, the statute provided that if a vacancy existed while the Senate was in session, a person receiving a recess appointment to fill that vacancy could not be paid from the Treasury until he or she had been confirmed by the Senate. Act of Feb. 9, 1863, ch. 25, § 2, 12 Stat. 642, 646. This original restriction, which forced recess appointees to serve without salary, was intended to protect the prerogatives of the Senate by making recess appointments more difficult. *See* 61 Cong. Globe, 37th Cong., 3rd Sess. 565 (1863). In 1940, Congress amended the statute "to render the existing prohibition on the payment of salaries more flexible," H.R. Rep. No. 76–2646, at 1 (1940), and to alleviate what was perceived to be the "serious injustice" caused by the law as it then stood, S. Rep. No. 76–1079, at 2 (1939). *See* Act of July 11, 1940, ch. 580, 54 Stat. 751; *see also* 41 Op. Att'y Gen. at 474. Thus, as amended, 5 U.S.C. § 56 permitted the immediate payment of salary to certain recess appointees, including those not appointed during a previous congressional recess. Because Congress sought, even through this less stringent 1940 version of the statute, to prevent the payment of salary to individuals who had received a previous recess appointment, it could be argued that § 56 was designed in par-

ticular to prevent such successive recess appointments. That goal would be served by a prohibition on the reimbursement of expenses, just as it would be served by a prohibition on the payment of salary.

The Congress that enacted § 56, however, elected to prohibit salary payments, not salary payments *and* reimbursement of expenses. In light of Congress's clear intent to effect no substantive changes in the 1966 codification of title 5, § 5503(a)'s prohibition cannot be interpreted to sweep in something clearly outside the scope of § 56's prohibition—a recess appointee's receipt of reimbursement for expenses.

In sum, we conclude that 5 U.S.C. § 5503(a) does not prohibit individuals reappointed to the Board of Directors of the Civil Liberties Public Education Fund during a congressional recess from receiving reimbursement for travel, subsistence, and other necessary expenses associated with performing their functions.

DAWN JOHNSEN
*Acting Assistant Attorney General*
*Office of Legal Counsel*